**UNITED STATES DISTRICT COURT**
**DISTRICT OF ARIZONA**

| | |
|---|---|
| Victor Lira,<br>Petitioner<br>-vs-<br>Charles L. Ryan, et al.,<br>Respondents. | CV-13-1989-PHX-DGC (JFM)<br><br>**Report & Recommendation On Petition**<br>**For Writ Of Habeas Corpus** |

## I. MATTER UNDER CONSIDERATION

Petitioner, presently incarcerated in the Arizona Department of Corrections, filed through counsel a Petition for Writ of Habeas Corpus pursuant to 28 U.S.C. § 2254 on October 1, 2013 (Doc. 1).  On December 31, 2013 Respondents filed their Response (Doc. 12).  Petitioner filed a Reply on January 23, 2014 (Doc. 15).

The Petitioner's Petition is now ripe for consideration.  Accordingly, the undersigned makes the following proposed findings of fact, report, and recommendation pursuant to Rule 8(b), Rules Governing Section 2254 Cases, Rule 72(b), Federal Rules of Civil Procedure, 28 U.S.C. § 636(b) and Rule 72.2(a)(2), Local Rules of Civil Procedure.

## II. RELEVANT FACTUAL & PROCEDURAL BACKGROUND

### A. FACTUAL BACKGROUND AND PROCEEDINGS AT TRIAL

According to Petitioner, on August 11, 2005 and proceeding into the next day, Petitioner and the victim had engaged in the abuse of various drugs.  Eventually, Petitioner and the victim's cousin, Dennis Armenta, got in a knife fight, the victim intervened and the victim was cut by Petitioner's knife.  Petitioner left in the victim's car with her purse and cash, and abandoned the car near a pecan grove where a necklace was

1

found pinned to a tree by a knife. The victim was later found dead with a number of stab wounds, a skull fracture, and punctures of the left lung and neck venous structures. (Petition, Doc. 1 at 8-10.)[1]

Petitioner was charged in Pinal County Superior Court on charges of first-degree murder, armed robbery, and theft arising out of the events in August, 2005.  (Pet. Exhibit 7, Mem. Dec. 3/10/10.)   (Exhibits to the Petition, Doc.1, which are unlabeled, are referenced in sequential order as "Pet. Exhibit ____."  Exhibits to the Answer, Doc. 12, are referenced herein as "Exhibit ___.")  On September 13, 2007, Petitioner was indicted in a second Indictment on charges of second degree murder, automobile theft, and armed robbery arising out of the same events (Exhibit A, Indictment), and the two indictments were consolidated.  (Pet. Exhibit 7, Mem. Dec. 3/10/10.)

Ultimately, Petitioner entered into a written Plea Agreement (Exhibit D) wherein he agreed to plead guilty to a charge of manslaughter with a stipulated prison sentence of 10.4 to 19 years (2 less than the maximum) in exchange for dismissal of the remaining charges.  The plea was accepted and on April 8, 2008, Petitioner was sentenced to an aggravated term of 19 years in prison.  (Exhibit H, Sentence.)

**B. PROCEEDINGS ON DIRECT APPEAL**

Having pled guilty, Petitioner waived his right to a direct appeal, *State v. Smith*, 184 Ariz. 456, 458, 910 P.2d 1, 3 (1996), and did not file a direct appeal.  (Petition, Doc. 1 at 3.)

**C.  PROCEEDINGS ON POST-CONVICTION RELIEF**

Petitioner commenced an of-right post-conviction relief proceeding by filing his Notice of Post-Conviction Relief (Exhibit I) on June 12, 2008.   Petitioner was represented in his PCR proceeding by his present counsel, Marc J. Victor.   Petitioner

---

[1] The undersigned relates Petitioner's version of the facts as background for purposes of understanding the nature of his claims, and not as factual findings.

2

filed his PCR Petition (Exhibit L) on January 30, 2009, arguing claims of insufficient factual basis for the plea, and ineffective assistance of trial counsel.

On June 2, 2009, the PCR court denied the petition, finding that there was a sufficient factual basis for the plea and consequently that trial counsel was not ineffective. (Pet. Exhibit 6, M.E. 6/2/09.)

Petitioner filed a Petition for Review (Exhibit P) by the Arizona Court of Appeals, raising the same claims.  The Arizona Court of Appeals rejected the claims as without merit.  (Pet. Exhibit 7, Mem. Dec. 3/10/10.)  Petitioner sought review from the Arizona Supreme Court (Exhibit AA), which was summarily denied on October 4, 2012.  (Pet. Exhibit 8, Order 10/4/12.)

## D.  PRESENT FEDERAL HABEAS PROCEEDINGS

**Petition** - Petitioner commenced the current case by filing through counsel his Petition for Writ of Habeas Corpus pursuant to 28 U.S.C. § 2254 on October 1, 2013 (Doc. 1).  Petitioner's Petition re-asserts his claims that there was an insufficient factual basis for the plea, and that trial counsel was ineffective for not raising the objection.

**Response** – On December 31, 2013, Respondents filed their Response ("Answer") (Doc. 12).  Respondents argue Petitioner's claim concerning the factual basis is not cognizable on habeas review, that his claims are procedurally defaulted, and without merit.

**Reply** - On January 23, 2014, Petitioner filed a Reply (Doc. 15).  Petitioner argues that his factual basis claim arises under the Constitution and therefore is cognizable on habeas review; that his claims were fairly presented to the state courts, and are meritorious.

## III. APPLICATION OF LAW TO FACTS

## A.  NON-COGNIZABLE CLAIMS

Respondents argue that Petitioner's Ground One is not cognizable on habeas

3

review because there is no federal requirement that a guilty plea be supported by a factual basis. (Answer, Doc. 12 at 11-15.)   Indeed, a federal habeas petition must be founded upon assertions that the petitioner is "in custody in violation of the Constitution or laws or treaties of the United States."   28 U.S.C. § 2254.   Respondents contend that the U.S. Constitution simply does not require a factual basis for a plea, and the only such requirement applicable to Petitioner arises under state law.

However, Respondents conflate the merits of Petitioner's claims with their source. The Petition argues that the Due Process clauses of the Fifth and Fourteenth Amendments mandate a factual basis for a plea. (Petition, Doc. 1 at 20-21.)   Petitioner's Reply makes clear that he relies upon a due process right under the federal Constitution as the basis for his claim. (Reply, Doc. 15 at 2-3.)

Thus, whatever its merits, Petitioner's Ground One clearly relies upon an assertion that he is held in custody in violation of the U.S. Constitution.   Petitioner has also referenced that the Arizona Rules of Criminal Procedure requiring a factual basis. That reference does not, however, vitiate the federal nature of his claim.


## B. EXHAUSTION & PROCEDURAL DEFAULT

Next, Respondents argue that Petitioner failed to fairly present the claims he now raises, they are now procedurally defaulted, and thus must be dismissed. (Answer, Doc. 12 at 15-23.)   Petitioner argues his claims were fairly presented to the state courts, and thus his state remedies were properly exhausted. (Reply, Doc. 15 at 4-7.)


## 1. Exhaustion Requirement

Generally, a federal court has authority to review a state prisoner's claims only if available state remedies have been exhausted. *Duckworth v. Serrano*, 454 U.S. 1, 3 (1981) (*per curiam*). The exhaustion doctrine, first developed in case law, has been codified at 28 U.S.C. § 2254(b) and (c). When seeking habeas relief, the burden is on the petitioner to show that he has properly exhausted each claim. *Cartwright v. Cupp*,

650 F.2d 1103, 1104 (9th Cir. 1981)(*per curiam*), *cert. denied*, 455 U.S. 1023 (1982).

"A petitioner fairly and fully presents a claim to the state court for purposes of satisfying the exhaustion requirement if he presents the claim: (1) to the proper forum, (2) through the proper vehicle, and (3) by providing the proper factual and legal basis for the claim." *Insyxiengmay v. Morgan*, 403 F.3d 657, 668 (9th Cir. 2005).

**Proper Proceeding** - Ordinarily, "to exhaust one's state court remedies in Arizona, a petitioner must first raise the claim in a direct appeal or collaterally attack his conviction in a petition for post-conviction relief pursuant to Rule 32." *Roettgen v. Copeland*, 33 F.3d 36, 38 (9th Cir. 1994). Only one of these avenues of relief must be exhausted before bringing a habeas petition in federal court. This is true even where alternative avenues of reviewing constitutional issues are still available in state court. *Brown v. Easter*, 68 F.3d 1209, 1211 (9th Cir. 1995); *Turner v. Compoy*, 827 F.2d 526, 528 (9th Cir. 1987), *cert. denied*, 489 U.S. 1059 (1989). "In cases not carrying a life sentence or the death penalty, 'claims of Arizona state prisoners are exhausted for purposes of federal habeas once the Arizona Court of Appeals has ruled on them.'" *Castillo v. McFadden*, 399 F.3d 993, 998 (9th Cir. 2005)(quoting *Swoopes v. Sublett*, 196 F.3d 1008, 1010 (9th Cir. 1999)).

**Fair Presentation** - To result in exhaustion, claims must be "fairly presented." That is, the petitioner must provide the state courts with a "fair opportunity" to apply controlling legal principles to the facts bearing upon his constitutional claim. 28 U.S.C. § 2254; *Picard v. Connor*, 404 U.S. 270, 276-277 (1971). A claim has been fairly presented to the state's highest court if petitioner has described both the operative facts and the federal legal theory on which the claim is based. *Kelly v. Small*, 315 F.3d 1063, 1066 (9th Cir. 2003).

Legal Theory - Failure to alert the state court to the constitutional nature of the claim will amount to failure to exhaust state remedies. *Duncan v. Henry*, 513 U.S. at 366. While the petitioner need not recite "book and verse on the federal constitution," *Picard v. Connor*, 404 U.S. 270, 277-78 (1971) (quoting *Daugherty v. Gladden*, 257

F.2d 750, 758 (9th Cir. 1958)), it is not enough that all the facts necessary to support the federal claim were before the state courts or that a "somewhat similar state law claim was made." *Anderson v. Harless*, 459 U.S. 4, 6 (1982)(*per curiam*).

"In order to alert the state court, a petitioner must make reference to provisions of the federal Constitution or must cite either federal or state case law that engages in a federal constitutional analysis." *Fields v. Waddington*, 401 F.3d 1018, 1021 (9th Cir. 2005). However, a bare reference to federal law is insufficient; the nature of the federal claim must be fairly stated. "[I]t is not enough to make a general appeal to a constitutional guarantee as broad as due process to present the 'substance' of such a claim to a state court." *Gray v. Netherland*, 518 U.S. 152, 163 (1996). *See also Hiivala v. Wood*, 195 F.3d 1098, 1106 (9th Cir. 1999). A "shotgun" listing of federal constitutional provisions is insufficient. "Exhaustion demands more than drive-by citation, detached from any articulation of an underlying federal legal theory." *Castillo v. McFadden*, 399 F.3d 993, 1003 (9th Cir. 2005).

Factual Basis - Although a federal habeas petitioner may reformulate somewhat the claims made in state court, *Tamapua v. Shimoda*, 796 F.2d 261, 262 (9th Cir. 1986), *rev'd in part on other grounds by Duncan v. Henry*, 513 U.S. 364 1995), the substance of the federal claim must have been "fairly presented" in state court. *Anderson v. Harless*, 459 U.S. 4, 6 (1982)(*per curiam*); *Picard v. Connor*, 404 U.S. 270, 278 (1971); *Tamapua*, 796 F.2d at 262. Thus, a petitioner may not broaden the scope of a constitutional claim in the federal courts by asserting additional operative facts that have not yet been fairly presented to the state courts. Expanded claims not presented in the highest state court are not considered in a federal habeas petition. *Brown v. Easter*, 68 F.3d 1209 (9th Cir. 1995); *see also, Pappageorge v. Sumner*, 688 F.2d 1294 (9th Cir. 1982), *cert. denied*, 459 U.S. 1219 (1983). Thus, while new factual allegations do not ordinarily render a claim unexhausted, a petitioner may not "fundamentally alter the legal claim already considered by the state courts." *Vasquez v. Hillery*, 474 U.S. 254, 260 (1986). *See also Chacon v. Wood*, 36 F.3d 1459, 1468 (9th Cir.1994).

**2. Application to Petitioner's Claims**

Here, the relevant proceeding in which Petitioner was required to fairly present his claims was his Petition for Review (Exhibit P) to the Arizona Court of Appeals from the denial of Petitioner's PCR petition.

**a.  Ground One** - In Ground One of his Petition, Petitioner argues that his rights to due process were violated when the trial court accepted his guilty plea without a sufficient factual basis to support the plea.  In particular, Petitioner asserts that the factual basis was insufficient as to whether his conduct resulted in the victim's death. "Specifically, Mr. Lira only admitted to accidentally causing a cut to the victim's chest. Mr. Lira did not admit to causing the multiple deep wounds which ultimately caused the victim's death."  (Petition, Doc. 1 at 21.)

In his Petition for Review, Petitioner argued that he "only admitted to an accidental cut to the victim, not the multiple deep stab wounds, one or more of which are the cause of death."  (Exhibit P, PFR at 9.)  He argued that a factual basis was required under Arizona Rule of Criminal Procedure 17.3.  (*Id.* at 7.)   In concluding his argument on the requirement for a factual basis he added that a "factual basis for Manslaughter was required by both the United States and Arizona Constitutions."  (*Id.* at 9.)  Such a broad reference to the U.S. Constitution would not be sufficient to fairly present Petitioner's instant due process claim.

Petitioner also argues that he specifically cited to several state cases that relied upon federal due process cases. (Reply, Doc. 15 at 5, n.2 and surround text, referencing *State v. Carr, State v. Hamilton,* and *State v. McVay.*)  However, a review of those cases reveals that the federal authorities referenced were cited for other reasons.  "[S]uch a citation is insufficient when, as here, the federal claim asserted in the cited case is not even the same as the federal claim on which federal habeas relief is sought."  *Anderson v. Harless*, 459 U.S. 4, 7, n. 3 (1982).

In *State v. Carr*, the only federal citation was related to comparison of the application of the factual basis requirement under Federal Rule of Criminal Procedure

7

1   11, from which the Arizona rule requiring a factual basis "is derived."   *State v. Carr*,

2   112 Ariz. 453, 454, 543 P.2d 441, 443 (1975).  *See id.* (citing *McCarthy v. U.S.,* 394 U.S.

3   459 (1969) (applying Fed. R. Crim. P. 11)).[2]  Thus, this was not a case founded upon the

4   constitutional principles upon which Petitioner now relies.

5        Petitioner points to his citation in his Petition for Review to *State v. Hamilton,*142

6   Ariz. 91, 688 P.2d 983 (1984), arguing the case cited "numerous U.S. Supreme Court

7   decisions pertaining to sufficiency of factual basis to support a guilty plea."  However,

8   the only cases cited in that court's discussion of a factual basis requirement were state

9   court cases.  The only U.S. Supreme Court cases cited in *Hamilton* were in connection

10  with the review of the appeal without argument from counsel pursuant to *Anders v.*

11  *California*, 386 U.S. 738 (1967), the requirement for a voluntariness colloquy under

12  *Boykin v. Arkansas*,   and the assertion of a *Miranda* violation in that case, not the

13  discussion of a factual basis requirement.  *Hamilton, supra* at 92, 93 and 94, 688 P.2d at

14  984, 986, and 986.

15       Finally, Petitioner points to his references to *State v. McVay,* 131 Ariz. 369, 641

16  P.2d 857 (1982) (citing *Boykin v. Alabama,* 395 U.S.238 (1969)).  Again, however, this

17  reference was outside the *McVay* court's discussion of the factual basis requirement, and

18  was in connection with the defendant's assertions of a failure to adequately advise him of

19  his rights.  131 Ariz. at 371-372, 641 P.2d at 859-860.

20       Thus, none of these cases would have fairly alerted the Arizona Court that

21  Petitioner was making his claim under the federal due process rights.

22       However, at the outset of his Petition, in summarizing the proceedings below,

23  Petitioner had argued that his factual basis claim was founded upon a denial of

24  Petitioner's "right to due process as guaranteed by the Fifth and Fourteenth Amendments

25  of the Unites States Constitution."  (Exhibit P at 6.)

26       Respondents argue that Petitioner's "general allegation that his due process rights

27

28  ───────────────
    [2] Fed. R. Crim. P. 11 is itself not applicable to state criminal proceedings.  *See Frank v.*
    *Blackburn*, 646 F.2d 873, 882 (5th Cir. 1980).

were violated was insufficient to achieve fair presentation." (Answer, Doc. 12 at 20.) The cases on which Respondents rely do not require anything more than Petitioner provided the Arizona Court of Appeals.

In *Gray v. Netherland*, 518 U.S. 152, 163 (1996), the Court broadly stated that "it is not enough to make a general appeal to a constitutional guarantee as broad as due process to present the 'substance' of such a claim to a state court." *Id.* at 163. However, *Gray* found a failure to fairly present a due process "misrepresentation-of-evidence" claim where the arguments below had apparently been focused on a related "notice-of-evidence" claim. In this case, Petitioner does not purport to assert a new, related claim, based upon an early assertion of a due process violation. Rather, he plainly referenced the due process clauses of the Fifth and Fourteenth Amendments and argue that they were violated by failure to find an adequate factual basis. No inference of another claim was required for the Arizona Court of Appeals to address the claim he now asserts.

Respondents cite *Fields v. Waddington*, 401 F.3d 1018 (9th Cir. 2005). In *Fields, the* "Petitioner's briefing to the state court mentioned the 'federal Constitution' twice, and 'due process' once, but discussed an applicable provision of the state constitution throughout the remainder of the argument." *Id.* at 1021. The court held that "Petitioner's mere mention of the federal Constitution as a whole, without specifying an applicable provision, or an underlying federal legal theory, does not suffice to exhaust the federal claim." In contrast, here Petitioner referenced specific constitutional provisions, and laid out his constitutional theory – i.e. that due process required a finding of a factual basis.

Finally, Respondents cite *Castillo v. McFadden*, 399 F.3d 993 (9th Cir.2005), which held that exhaustion demands more than a citation to a general constitutional provision, detached from any articulation of the underlying federal legal theory, or in the court's words "drive-by citation." *Id.* at 1002. The petitioner in *Castillo* had laid out three claims to the state court, and then first referenced federal law in his summary by arguing that "'[t]he gross violations of Appellant's Fifth, Sixth, and Fourteenth

9

Amendment rights requires [sic] that his convictions and sentences be reversed and that he be granted a new trial consistent with due process of law.'"  *Id.*.  The court observed that the petitioner "left the Arizona Court of Appeals to puzzle over how the Fifth, Sixth, and Fourteenth Amendments might relate to his three foregoing claims."  *Id.*  Here, Petitioner did not simply proffer drive-by citations to federal law unconnected to specific claims, but instead summarized his arguments to the PCR Court, including specific references to the two federal due process clauses (Exhibit P, Petition at 6), and then summarized the factual basis of his claim (*id.* at 6-9) and argued that a finding of a factual basis was a requirement under the federal constitution (*id.* at 9).  Thus, the Arizona Court of Appeals was not left to puzzle over which constitutional provisions Petitioner believed required a factual finding.  It was explicit within the four corners of Petitioner's Petition for Review.

Perhaps Respondents believe citation to specific cases was required, not just references to specific constitutional provisions.  The federal courts have never so held.

Accordingly, the undersigned finds that Petitioner fairly presented his federal claim from Ground One to the Arizona Court of Appeals.

**b.  Ground Two** – Respondents argue that Petitioner's Ground Two consists of two separate claims of ineffective assistance: one founded upon trial counsel's failure to object to the lack of a factual basis for the plea, and a separate claim based on trial counsel's failure to present the autopsy report to support his now asserted claim that he did not cause the victim's death.  In his Reply, Petitioner dithers about whether he presents one or two claims, and apparently concedes that a claim based solely on failure to present the autopsy report would be procedurally defaulted.  (Reply, Doc. 15 at 6-7.)

In his Petition, the statement of his claim in Ground Two is focused exclusively on the failure to object.

> b. Ground Two: Defense counsel was ineffective for failure to raise the issue of insufficient factual basis during the plea hearing. The supporting facts are stated in the following memorandum. This issue was not raised on a direct appeal because Mr. Lira's plea waived the direct appeal. The issue was raised before the Arizona Court of

Appeals during post conviction proceedings.

(Petition, Doc. 1 at 5.) On screening, this Court discerned only the one claim.  (Order 10/4/13, Doc. 5 at 2.)   It is only in his Memorandum, as part of his "supporting facts" referenced in the Petition, that Petitioner references the omitted autopsy report, and does so only by pointing out that the Arizona Court of Appeals had relied upon the omission of the autopsy report to reject his contention that material discrepancies existed between the charges and the record in the Grand Jury transcripts and autopsy reports.  (Petition, Doc. 1 at 23.)

Moreover, the Arizona Court of Appeals did not chide Petitioner for trial counsel's failure to introduce the autopsy at trial, but for his failure to provide it to the trial court in support of his petition for post-conviction relief.  (*See* Pet. Exhibit 1-7, Mem. Dec. at 4.)   Indeed, it would only have been logical for trial counsel to have admitted the autopsy report had he mounted a challenged to the factual basis, something Petitioner contends counsel did not do. Perhaps some confusion arises from the Arizona Court of Appeals' use of the phrase "trial court" to discuss the absence of the autopsy report.  (*Id.*)  However, the appellate court used that term interchangeably to reference proceedings at trial and on post-conviction review.  (*See e.g. id.* at 2 ("Lira sought post-conviction relief...[t]he trial court denied relief, and this petition for review followed").)

Therefore, the undersigned concludes that Petitioner asserts a single claim for relief in Ground Two, trial counsel's failure to challenge the adequacy of the factual basis, and that references to the absence of an autopsy report are simply part of the factual support for that contention, intended to show that such failure was prejudicial.


## 3.  Summary Re Exhaustion

Based upon the foregoing,  the undersigned concludes that Petitioner properly exhausted his state remedies as to both grounds raised in his Petition.

//

//

11

**C. MERITS OF GROUND ONE – FACTUAL BASIS FOR PLEA**

For his Ground One, Petitioner contends that his due process rights were violated because he was convicted on a guilty plea without an adequate finding of a factual basis.

**State Decision Does Not Implicate Supreme Court Law** - While the purpose of a federal habeas proceeding is to search for violations of federal law, not every error justifies relief. "[A] federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the state-court decision applied [the law] incorrectly." *Woodford v. Visciotti*, 537 U. S. 19, 24–25 (2002) (per curiam). Rather, a state court's decision must be "contrary to, or an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States" before habeas relief may be granted. 28 U.S.C. §2254(d)(1).

The Ninth Circuit has plainly rejected the claim that a guilty plea always necessitates a factual basis. "We conclude that the due process clause does not impose on a state court the duty to establish a factual basis for a guilty plea absent special circumstances." *Rodriguez v. Ricketts*, 777 F.2d 527, 528 (9th Cir. 1985). The only such "special circumstances" identified to date have been where a guilty plea is taken in the face of a defendants' protestations of innocence. *Id.* (citing *Banks v. McGougan,* 717 F.2d 186, 188 (5th Cir.1983)). *See North Carolina v. Alford,* 400 U.S. 25 (1970); and *Loftis v. Almager*, 704 F.3d 645 (9th Cir. 2012). Where a plea is not accompanied by protestations of innocence, *e.g.* where a defendant pleads "no contest," no factual basis is required. *Id.*

Moreover, even where the circuit courts require a factual basis, that requirement is not based upon a holding of the Supreme Court, but upon the *dicta* in *Alford*. "While *Alford* did not explicitly hold that a factual basis was constitutionally necessary, lower federal courts have drawn from [language in *Alford*]] the requirement that if a defendant pleads guilty while claiming innocence the trial court must find a factual basis. *Loftis,* 704 F.3d at 650. "For purposes of 28 U.S.C. § 2254(d)(1), clearly established law as determined by [the Supreme] Court 'refers to the holdings, as opposed to the *dicta*, of

[that] Court's decisions as of the time of the relevant state-court decision.' " *Yarborough v. Alvarado*, 541 U.S. 652, 660-61 (2004) (quoting *Williams v. Taylor,* 529 U.S. 362, 412 (2000)).

Thus, regardless whether this Court or the circuit courts might hold a factual basis constitutionally required to support some guilty pleas, the Supreme Court has never so held.  Accordingly, habeas relief is not authorized under 28 U.S.C. § 2254(d)(1).

**No Factual Basis Required because No Protestation of Innocence** - Even if *Alford* could be read as mandating a factual basis in the face of a protestation of innocence, Petitioner made no such protest at the time of his plea.

To the contrary, Petitioner repeatedly advised the trial court that he committed the offense to which he was pleading guilty.

> **THE COURT:** Is the only reason you're pleading because in fact you did do this?
> **VICTOR LIRA:** Yes.

(Pet. Exhibit 3, R.T. 1/14/08 at 53)

> **THE COURT:** Sir, how do you plead to Manslaughter, a class 2 dangerous felony?
> **VICTOR LIRA:** Guilty.
> **THE COURT:** And did you on or about August 12, 2005 while in or near Eloy, Arizona, while in Pinal County, commit that offense?
> **VICTOR LIRA:** Yes.

(*Id.* at 53-54.)

To be sure, Plaintiff now contends that he made "proclamations of innocence." (Reply, Doc. 15 at 3.)  He founds this argument on four things: (1) his claim that the victim was alive when he left her; (2) his failure to admit inflicting all of the victim's wounds; (3) his expressed doubts about whether he caused the victim's death; and (4) the lack of credibility of the hearsay statements presented to the Grand Jury from the victm's cousin with whom Petitioner left the victim.  (*Id.* at 7.)

However, the first and fourth contentions are not protestations of innocence at the time of his plea, but references to matters presented to the grand jury.  In the first instance, Petitioner references the Grand Jury transcript where his version of the facts is

13

presented to the Grand Jury.  (Pet. Exhibit 1, R.T. 6/14/06 at 236-239.)  In the second, he references the portions of the Grand Jury transcript where the other witness's statements are presented.  (*Id.* at 249-251.)   Granted, the parties stipulated to admission of the Grand Jury transcripts in support of the factual basis.  (Pet. Exhibit 3, R.T. 1/14/08 at 55.)  But that admission no more equated to a protestation of innocence by Petitioner than it equated to an admission by Petitioner to other statements by the grand jury witnesses.

Moreover, even if attributable to Petitioner, neither of these are assertions of innocence. Petitioner proffers nothing to suggest that his manslaughter conviction required evidence that he was present when the victim expired.  Nor does he suggest that he had disputed before the trial court the portions of the grand jury testimony that attributed the homicide to Petitioner.  Even had he disputed such statements, that is not the equivalent of denying that he killed the victim.

The second and third contentions (that Petitioner failed to admit inflicting all of the victim's wounds, and expressed doubts about causing the victim's death), are not supported by the record.  Petitioner's statements at the time of the plea were limited:

> **THE COURT:** Tell me what happened.
> **VICTOR LIRA:** I had an altercation with a cousin of the victim. It got out of hand. She got cut. I left and this is the result.
> **THE COURT:** And in cutting her, this cut is what led to her ultimate death?
> **VICTOR LIRA:** It's never been -- they never established that.
> **MR. SOSLOWSKY:** [Prosecutor] Judge, could I add in?
> **THE COURT:** Sure.
> **MR. SOSLOWSKY:** [Defense counsel] Judge, there is no reason to believe that anything else happened. There's every reason to believe that it was this cut or more than one cut that did lead to her death.
> **THE COURT:** And you're satisfied with the investigation done by your attorneys to the extent, even though you may not have received an actual document or  something, that says absolutely it is the one cut that you did or whatever you did that caused her death?
> You are satisfied that the evidence that they have reviewed and submitted, you are satisfied with their work in that regard?
> **VICTOR LIRA:** Yes.

14

(Pet. Exhibit 3, R.T. 1/14/08 at 54-55.)   Thus, at most, Petitioner contended that the prosecution had not produced evidence that he had caused the victim's death.   He did not, however, affirmatively assert that he had not caused the victim's death.   And, he expressed his confidence in defense counsel's efforts to disprove causation.

As recognized in *Alford*, "[a]n individual accused of crime may voluntarily, knowingly, and understandingly consent to the imposition of a prison sentence even if he is unwilling or unable to admit his participation in the acts constituting the crime." 400 U.S. at 37.   In such instances, a factual basis was not of concern.   Rather it was only where the defendant presented "a plea containing a protestation of innocence" that the *Alford* court found a finding of "strong evidence of guilt" necessary.   *Id.*   Indeed, "Alford took the stand and testified that he had not committed the murder but that he was pleading guilty because he faced the threat of the death penalty if he did not do so."   *Id.* at 28.

Here, Petitioner merely equivocated on whether the prosecution had "established" that he was the cause of death, he did not assert that he in fact was not. (Pet. Exhibit 3, R.T. 1/14/08 at 54.)

> [I]t is not incumbent upon the sentencing court to ascertain whether the defendant believes in his innocence. Instead, it is the defendant's duty to assert innocence and thereby bring to the court's attention the need to ensure a factual basis for the guilty plea notwithstanding his claim of innocence…To be sure, the fact that counsel claimed that Orman suffered from amnesia indicates that Orman was not admitting guilt. But inability to admit guilt is a far cry from an assertion of innocence.

*Orman v. Cain*, 228 F.3d 616, 621 (5th Cir. 2000).

**<u>No Unreasonable Determination of the Facts</u>** – The only other basis for a state prisoner to support a habeas challenge is to show that the state court's decision "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding."   28 U.S.C. § 2254(d)(2).   "Such a challenge may be based on the claim that the finding is unsupported by sufficient evidence, that the process employed by the state court is defective, or that no finding was made by the state court at

all." *Taylor v. Maddox*, 366 F.3d 992, 999 (9th Cir. 2004).

Petitioner makes no assertion that the state court's decision was unsupported by sufficient evidence, that the process employed was defective, or that the state court made no factual finding.   Instead, Petitioner simply argues that the state court relied on inaccurate grand jury testimony regarding the findings of the autopsy and Petitioner's statements to the police.[3]   (Petition, Doc. 1 at 19.)   However, Petitioner points to no authority that makes a state court's reliance on what might ultimately turn out to be inaccurate testimony an unreasonable determination.   (Permitting such a claim would invite retrials on every factual basis determination, to ascertain the ultimate credibility of the proffered evidence.)

**Presumption of Correctness** –   Petitioner acknowledges that "a determination of a factual issue made by a State court shall be presumed to be correct" and the Petitioner has "the burden of rebutting the presumption of correctness by clear and convincing evidence." 28 U.S.C. § 2254(e)(1).   (*See* Petition, Doc. 1 at 19.)   Still, Petitioner contends that this presumption does not apply because the state court's findings were deficient because they were based on inaccurate grand jury testimony.   (*Id.*)   In support of this contention, Petitioner cites *Townsend v. Sain*, 372 U.S. 293, 318 (1963).   However, *Townsend* did not address the presumption of correctness, but rather when an evidentiary hearing was mandatory in a habeas proceeding.   *See Keeney v. Tamayo-Reyes*, 504 U.S. 1, 10, n. 5 (1992) (distinguishing between *Townsend*'s evidentiary hearing standard and the presumption of correctness standard applicable to state court findings).

Even if *Townsend* applied to the presumption of correctness, inaccurate evidence is not a circumstance identified in *Townsend*.

> We hold that a federal court must grant an evidentiary hearing to a habeas applicant under the following circumstances: If (1) the merits of the factual dispute were not resolved in the state hearing;

---

[3]   Although this argument is raised by Petitioner in the context of applying the presumption of correctness under 28 U.S.C. § 2254(e)(1), the undersigned considers the argument in applying § 2254(d)(2).

(2) the state factual determination is not fairly supported by the record as a whole; (3) the fact-finding procedure employed by the state court was not adequate to afford a full and fair hearing; (4) there is a substantial allegation of newly discovered evidence; (5) the material facts were not adequately developed at the state-court hearing; or (6) for any reason it appears that the state trier of fact did not afford the habeas applicant a full and fair fact hearing.

*Townsend*, 372 U.S. at 313.

Indeed, where the state court has rendered a decision on the merits of a claim, the only exceptions to application of the presumption of correctness are those arising under 28 U.S.C. § 2254(d)(2), *i.e.* "that the finding is unsupported by sufficient evidence, that the process employed by the state court is defective, or that no finding was made by the state court at all." *Taylor*, 366 F.3d at 999. If those don't apply, the presumption does. As noted above, however, Petitioner does not mount such a challenge.

Accordingly, the presumption of correctness applies to the state court's factual findings, and Petitioner remains obligated to overcome them by clear and convincing evidence.

That is presuming, however, that Petitioner is entitled to do so with the evidence on which he now relies. In *Cullen v. Pinholster*, 131 S.Ct. 1388 (2011), the Supreme Court "made clear that a federal habeas court may not consider evidence of a claim that was not presented to the state court" where the claim was "previously 'adjudicated on the merits in State court proceedings.'" *Dickens v. Ryan*, 740 F.3d 1302, 1320 (9th Cir. 2014) (quoting *Pinholster*, 131 S.Ct. at 1398, 1401).

Here, Petitioner's contention is that the inaccuracies of the grand jury testimony are shown by reference to the autopsy report, pointing to discrepancies between testimony that Petitioner had made statements about stabbing the victim in the torso, and the number of injuries, both of which were belied by the autopsy report. (Petition, Doc. 1 at 19.) However, Petitioner never introduced that autopsy report in the state courts. The Arizona Court of Appeals observed:

> Lira contends on review that the trial court erred when it found the grand jury transcripts established an adequate factual basis for his plea because the detective who testified read portions of an autopsy report that were not supported by the examination

17

itself.  He asserts that, although the report stated the victim had died of stab wounds to the neck and torso with perforations to the interior neck venous structures and left lung, the autopsy report contains no description of cuts or stab wounds to the torso.  He points to other instances in which he claims discrepancies existed between the detective's testimony and the report.  But Lira did not make this argument in his petition for post-conviction relief.  Rather, he argued he had "only admitted to an accidental cut to the victim, not the multiple deep stab wounds, one or more of which are the cause of death," which he claimed were the basis of the testimony before the grand jury.  He maintained he "never admitted to committing the requisite elements of the crime."  We will not address the arguments Lira raises for the first time on review.  *See State* v. *Ramirez,* 126 Ariz. 464, 468, 616 P.2d 924,928 (App. 1980); *see also* Ariz. R. Crim. P. 32.9.

   Moreover, Lira did not provide the trial court with a copy of the medical examiner's report, nor was it part of the existing record.  Therefore, even assuming the argument he raises on review could be regarded as a fair challenge to the trial court's ruling rather than a new argument, he has not substantiated his claim that material discrepancies existed.

(Pet. Exhibit 7, Mem. Dec. at 3-4.)

   Thus, this habeas court may not consider the autopsy report in evaluating the reasonableness of the state court's factual determinations.

   **Factual Basis Properly Found** – Even if Petitioner could show that the state court's reliance on "inaccurate" testimony would render it an unreasonable determination of the facts, and that a factual basis was constitutionally required, this Court could not find that the discrepancies to which Petitioner points establish the absence of a factual basis to support his plea.

   The requirement for finding a factual basis is a modest one.  "The court need not be convinced beyond a reasonable doubt that an accused is guilty. It need only be convinced that there is sufficient evidence to justify the reaching of such a conclusion." *U.S. v. Neel*, 547 F.2d 95, 96 (9th Cir. 1976).  In reaching that determination, "a court need not rely on the plea colloquy alone and may conclude that a factual basis exists from anything that appears on the record."  *U.S. v. Mancinas-Flores*, 588 F.3d 677, 682 (9th Cir. 2009) (quotations omitted).

   There are a number of sources from which the court may determine 'factual basis.' ... [T]he failure of the court to inquire personally of the defendant is not of itself grounds for reversal if the factual basis is otherwise established.

1
       The court may inquire of the prosecution or the law enforcement officer who investigated the case.

2
*U.S. v. Fountain*, 777 F.2d 351, 355 (7th Cir. 1985) (quoting 8 J. Moore, Moore's Federal

3
Practice ¶ 11.07[1] (2d ed. 1985)).

4
      At times, Petitioner's arguments seem to suggest a belief that only his own

5
admissions can provide a factual basis for his plea.  "It is well established, however, that

6
a defendant's own statements need not furnish the factual basis for the plea."  *Schone v.*

7
*Purkett*, 15 F.3d 785, 788 (9th Cir. 1994).  Indeed, the premise of the constitutional need

8
for a factual basis is the defendant's explicit assertion of innocence, obviating the need

9
for a defendant's admissions to provide the factual basis.

10
      Even now, Petitioner does not deny inflicting a knife wound on the victim.

11
Rather, Petitioner's core contention is that he only admitted to accidentally wounding the

12
victim, and that he did not admit that the wound he inflicted caused the victim's death.

13
(Petitioner suggests that the victim's cousin with whom he left her actually killed her.

14
(Petition, Doc. 1 at 21; Reply, Doc. 15 at 7.))

15
      Contrary to his present spin, Petitioner did not tell the trial court that he

16
"accidentally" wounded the victim.  Rather, he made the blanket admission that his knife

17
fight got out of hand and the victim "got cut."  (Pet. Exhibit 3, R.T. 1/14/08 at 54.)  His

18
use of a passive voice to describe the infliction of the wound provided no place for an

19
admission or denial of his own mental state.  Indeed, his own actions must be implied

20
into the sentence.

21
      And while Petitioner may not have expressly connected that wound to the

22
victim's death, there was a factual basis on the record for such a finding.  Petitioner

23
described the wound he inflicted as follows:

24
           **VICTOR LIRA:** The cut, I'm not too positive about, but it was around this area.

25
           **THE COURT:** Around the left breast area?
           **VICTOR LIRA:** Yes.

26
(Pet. Exhibit 3, R.T. 1/14/08 at 55.)  The prosecutor then expounded:

27

28
           **MS. PIERCE:** Your Honor, and I think the medical examiner's report will reflect that there was a puncture wound to

19

1         that area which is -- that ended up puncturing her lung that may have been one of the fatal wounds.

2 (*Id.* at 55-56.)

3       Thus, based solely on the plea colloquy, the trial court was faced with admissions

4 from Petitioner and proffers of evidence from defense counsel and the prosecution that

5 Petitioner had cut the victim, and that she died as a result of one or more of multiple

6 knife wounds inflicted by Petitioner.

7       Further, on request of the trial court and stipulation of the parties, the trial court

8 considered the information from the grand jury transcripts.  (Pet. Exhibit 3, R.T. 1/14/08

9 at 55.)  The first grand jury transcript included evidence that: (1) the autopsy listed the

10 cause of death as "stab wounds to the neck and torso with perforations of the interior

11 [sic] neck venous structure and left lung"  (Pet. Exhibit 1, R.T. 6/14/06 at 221); (2)

12 Petitioner had been using marijuana and methamphetamine prior to the knife fight (*Id.* at

13 232); (3) Petitioner stated he was fighting with the victim's cousin, the victim intervened

14 and he cut her on her shoulder, and they continuing to engage each other with anger (*id.*

15 at 235); (4) Petitioner asserted that the victim was ambulatory, going to the bathroom to

16 tend her cut when he left, despite the absence of any significant blood evidence outside

17 the bedroom where she died (*id.* at 236, 238-239); (5) there were no wounds on the

18 victim's cousin, who was still in the house with her when she was found dead (*id.* at 239-

19 240); (6) the victim sustained a variety of knife wounds to her chest, throat area,

20 shoulder, knee, and skull, some of which were defensive in nature (*id.* at 246); (7)

21 Petitioner said that he may have stabbed the victim more than one time; (*id.* at 246); and

22 (8) the victim's cousin reported hearing the victim argue with a man she had brought

23 home who was not known to him (*id.* at 249).

24       The second grand jury transcript included largely the same evidence, as well as

25 evidence that: (1) the victim's cousin was elderly, suffering from diabetes and hepatitis

26 C, and was a hospice patient (Pet. Exhibit 2, R.T. 9/13/07 at 264, 272); (2) Petitioner said

27 that in his fight with the victim's cousin, Petitioner punched him with his knife, the

28 victim intervened and he "accidentally stabbed her at least once or a couple of times,

he's not sure how many times" (*id.* at 269-270); (3) that the victim's cousin had no bruises, scratches or injuries anywhere other than the disease related injuries on his feet (*id.* at 272-273); (4) the victim's cousin carried a swiss army knife, which had no blood evidence on or in it (*id.* at 275); and (5) the victim had been engaged in a violent struggle, with defensive wounds, blood spatter on three walls, and the bed torn apart (*id.* at 284).

With particular regard to the victim's cousin, the transcripts reflected that he died between the time of the victim's murder and when police identified Petitioner as a suspect.  (Pet. Exhibit 1, R.T. 6/14/06 at 222-223; Pet. Exhibit 2, R.T. 9/13/07 at 264.) He had not told police of having been in a fight with anyone.  (Pet. Exhibit 1, R.T. 6/14/06 at 224, 244.)

In light of that additional record, even if it were assumed that Petitioner had explicitly denied intentionally injuring the victim, and denied that the injury caused her death, the trial court could have found sufficient evidence to justify a conclusion that Petitioner recklessly injured the victim and left her unaided, and that the injuries he inflicted caused her death.   The evidence provided reasonable inferences that the allegation of a fight with the victim's cousin was a fabrication, that Petitioner engaged the victim in a violent, angry, drug fueled attack, stabbing and cutting her repeatedly, and then left her dying, if not already dead.  That was more than enough factual basis to support a finding that Petitioner committed "manslaughter by '[r]ecklessly causing the death of another person.'"[4] (Pet. Exhibit 7, Mem. Dec. at 3 (quoting A.R.S. § 13-1103(A)).)

Petitioner now wants to quibble, asserting that there were discrepancies, other evidence, and possibly another culprit.  However, a finding of a factual basis does not require the court to try the case – it is not intended to determine the defendant's guilt. Rather, the goal of a finding of a factual basis is to satisfy the court that the defendant

---

[4]  At sentencing, the trial court described its view of Petitioner's recklessness as Petitioner, after injuring the victim, leaving her to die without making any effort to get her assistance.  (Pet. Exhibit 4, R.T. 4/8/08 at 36-37, 39-40.)

"intelligently concludes that his interests require entry of a guilty plea" despite his protestations of innocence. *Alford*, 400 U.S. at 37. The factual basis requirement "does not require the district court to weigh any evidence or predict what a jury would do with the case." *U.S. v. Smith*, 160 F.3d 117, 121 (2nd Cir. 1998). "The purpose of this requirement is to ensure that the defendant is not mistaken about whether the conduct he admits to satisfies the elements of the offense charged." *U.S. v. Mancinas-Flores*, 588 F.3d 677, 682 (9th Cir. 2009).

**<u>Autopsy Report</u>** – As discussed hereinabove, this Court is precluded from considering the autopsy report because it was not presented to the state courts.[5] Even if the report could be considered, it would not eliminate the sufficiency of the factual basis.

Petitioner relies upon the autopsy report to contend that Petitioner's admissions and the record conflicted with the report.

> Specifically, the autopsy does not show a single stab wound or puncture to the victim's torso. However, the court made a factual finding that the victim bled to death from a wound to the torso. Additionally, Mr. Lira said he accidentally cut the victim in the chest area. Yet again, in the autopsy report, there are no indications that the victim was cut in the chest. The state court completely ignored this major discrepancy. The state court also ignored the fact that the autopsy showed sixteen total wounds, cuts, insufficient to support the acceptance of a plea to Manslaughter because there are massive causation questions left unanswered.

(Pet. Doc. 1 at 19-20.)

As discussed hereinabove, however, the trial court is not required to weigh out all the evidence, let alone rely solely upon uncontradicted evidence.

Moreover, the autopsy was not part of the record before the trial court, and it is the record before the trial court which must be looked to in order to establish a factual basis.

Finally, the discrepancies are not sufficient to discredit the substantial evidence supporting a finding of a factual basis. Petitioner contends the report does not show a

---

[5] Aside from the limitations of 28 U.S.C. § 2254(d)(1) to consideration of the record before the trial court, Petitioner fails to show diligence in developing the state court record with the autopsy report, as required by 28 U.S.C. § 2254(e)(2).

wound to the torso.  However, the report plainly lists the cause of death as "stab wounds to neck and torso."  (Pet. Exhibit 9.)  Moreover, the diagrams plainly depict wounds to the chest, shoulders and back, all part of the torso.  (*Id.*)

Petitioner contends that the report did not show injuries to the chest, where Petitioner described the wound at the plea colloquy.  To the contrary, the diagrams appear to reflect injuries to the chest above the left breast.  (*Id.*)  Moreover, the trial court had in the record contrary statements from Petitioner about the wounds he caused, alternately describing it as her shoulder. (Pet. Exhibit 1, R.T. 6/14/06 at 235.)

Petitioner contends that the autopsy shows 16 wounds, raising issues of causation.  Those causation issues only arise, however, if the trial court were required to find credible Petitioner's vacillating assertions that he only inflicted one wound, left the victim otherwise unharmed, and thus was not responsible for the other wounds.  To the contrary, as discussed hereinabove, there were ample facts before the trial court for it to conclude that Petitioner had inflicted all of the victim's wounds, thus leaving no need to parse which of them was the ultimate cause of death.  That those facts contradicted Petitioner's current or past version of the facts does not preclude them from being properly relied upon to find a factual basis sufficient to find Petitioner's plea voluntary and intelligent.

Accordingly, even had the autopsy report been before the trial court, the trial court could still have found a factual basis to support the plea.

**Summary** – For all of the foregoing reasons, Petitioner's Ground One is without merit and must be denied.

## D.  MERITS OF GROUND TWO – INEFFECTIVE ASSISTANCE

In Ground Two of his Petition, Petitioner argues that trial counsel was ineffective for failing to challenge the lack of a factual basis for his plea.  The Arizona Court of Appeals rejected this claim, finding that "because the factual basis was adequately established, trial counsel's performance, even if deficient, was not prejudicial."  (Pet.

Exhibit 7, Mem.Dec. at 7.) Respondents argue this was not contrary to or an unreasonable application of the standard for ineffective assistance of counsel under *Strickland v. Washington*, 466 U.S. 668 (1984) and *Hill v. Lockhart*, 474 U.S. 52 (1985). (Answer, Doc. 12 at 32-36.)

**Standard for Ineffective Assistance at Guilty Plea** – Generally, claims of ineffective assistance of counsel are analyzed pursuant to *Strickland v. Washington*, 466 U.S. 668 (1984). In order to prevail on such a claim, petitioner must show: (1) deficient performance - counsel's representation fell below the objective standard for reasonableness; and (2) prejudice - there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. *Id*. at 687 88, 694. Although the petitioner must prove both elements, a court may reject his claim upon finding either that counsel's performance was reasonable or that the claimed error was not prejudicial. *Id*. at 697.

In determining whether counsel performed deficiently, the court must focus on whether the attorney's advice was appropriate under the circumstances existing at the time of the guilty plea. *See Strickland*, 466 U.S. at 690. Moreover, there is a strong presumption counsel's conduct falls within the wide range of reasonable professional assistance and that, under the circumstances, the challenged action might be considered sound trial strategy. *United States v. Quinterro-Barraza*, 78 F.3d 1344, 1348 (9th Cir. 1995). The court should "presume that the attorneys made reasonable judgments and decline to second guess strategic choices." *United States v. Pregler*, 233 F.3d 1005, 1009 (7th Cir. 2000).

The pleading defendant must prove he was prejudiced from counsel's ineffectiveness by demonstrating a reasonable probability that but for his attorney's errors, he would not have pleaded guilty and would have insisted on going to trial. *Hill*, 474 U.S. at 58 59; *Strickland*, 466 U.S. at 694. The defendant must show "that but for counsel's errors, he would either have gone to trial or received a better plea bargain." *U.S. v. Howard*, 381 F.3d 873, 882 (9th Cir. 2004). The Court must assess the

circumstances surrounding the case to determine if the petitioner's allegation that he would have proceeded to trial is plausible. *See e.g. United States v. Keller*, 902 F.2d 1391, 1394 95 (9th Cir. 1990)(petitioner failed to show prejudice because he entered plea as alternative to long trial, possible conviction on more serious charges and a longer sentence; additional information about parole eligibility was unlikely to affect his decision). This is an objective analysis that requires the court to examine what a reasonable person would do "without regard for the idiosyncrasies of the particular decisionmaker." *Hill*, 474 U.S. at 60 (quoting *Strickland*, 466 U.S. at 695).

**State Court Decision Arguably Contrary to *Hill v Lockhart*** – Here, the terse decision of the Arizona Court of Appeals rejected Petitioner's claim on the basis of a lack of prejudice, founded upon the lack of merit to the factual basis claim. However, in cases involving a guilty plea, prejudice turns on whether a defendant would have pled guilty but for the deficient performance of counsel. The Arizona court did not discuss or acknowledge the impact of counsel's actions on Petitioner's decision to plead guilty. Unless it is presumed that the Arizona court made an implicit logical jump from the lack of merit of the attack on the factual basis to Petitioner's decision to plead, this decision would be contrary to *Hill*.

Nonetheless, Petitioner's claim is without merit.

**Petitioner Fails to Show Deficient Performance** – As discussed hereinabove, the record before the trial court was more than sufficient to establish a factual basis to support Petitioner's guilty plea.

From a federal constitutional standpoint, Petitioner cannot establish that such action would have been fruitful. As discussed hereinabove, in light of the grand jury transcripts, any objection by trial counsel, even efforts to introduce the autopsy report or explicit denials from Petitioner, would not have eliminated the trial court's ability to find a sufficient factual basis. "[T]he failure to take a futile action can never be deficient performance." *Rupe v. Wood*, 93 F.3d 1434, 1445 (9th Cir. 1996).

From the standpoint of pressing a state law claim, the Arizona Court of Appeals

has ruled that the factual basis was sufficient. This Court is not free to revisit that determination. *Estelle v. McGuire*, 502 U.S. 62, 67–68 (1991) ("it is not the province of a federal habeas court to reexamine state-court determinations on state-law questions").

Moreover, even if trial counsel could have successfully thwarted a finding of a factual basis (on either federal or state law grounds), doing so was not *ipso facto* a requirement of reasonable representation. A guilty plea proceeding is not a trial, with each side pursuing contrary goals. Rather, defense counsel at a guilty plea proceeding is seeking to effectuate and secure to the defendant the benefits of a plea agreement. Thus, reasonable counsel often seeks to facilitate the establishment of a factual basis, rather than seeking to destroy it.[6]

To be sure, Petitioner now contends that he felt a pressure to plead guilty that would have been eliminated if the factual basis had been eliminated and the plea rejected. (Reply, Doc. 15 at 10.) But there is nothing to suggest that Petitioner's current disposition toward the value of his plea agreement was present at that time. Few defendants don't feel pressure to accept a plea agreement. Nonetheless, they proceed because the agreements are beneficial to them. And reasonable attorneys counsel their clients to accept those plea agreements despite the fact that they are entered into in the face of pressure from a threat of greater punishment resulting from trial. And those same attorneys counsel their clients to assist in establishing a factual basis on the record to support their plea.

It is true that defense counsel has a responsibility to insure that his client is

---

[6] This inherent motivation to effectuate the plea agreement (before the defendant's hindsight changes his view of its value) might explain the apparent dearth of cases asserting ineffective assistance of counsel for failure to challenge a factual basis. The undersigned has located only one case supporting a relatively similar claim on its merits. In *Commonwealth v. Manning*, 398 A.2d 212 (Penn. 1979), the Pennsylvania Superior Court concluded that trial counsel had been ineffective for failing to challenge a defective factual basis in a motion to withdraw from the plea. Aside from being a post-plea failing, this case was pre-*Strickland*, and based upon Pennsylvania's ineffective assistance standard. *Cf. Adequacy of defense counsel's representation of criminal client regarding guilty pleas*, 10 A.L.R.4th 8 § 19 (Originally published in 1981) (detailing cases considering effectiveness regarding factual basis).

entering his plea knowingly and voluntarily. And as discussed hereinabove, the establishment of a factual basis has the same end.  But placing a factual basis on the record is not a requirement of counsel fulfilling that obligation (although it may be a requirement of insuring the vitality of a beneficial plea agreement).  Rather, counsel has many avenues to achieve such ends, including reviewing with the defendant in private the evidence against him, the elements of the charged offense, etc.   Petitioner has never contended that counsel failed to acted reasonably to meet that goal, and that as a result Petitioner was ignorant of the elements of manslaughter such that he could not make an intelligent comparison to his conduct and the evidence available to the prosecution, and thus make a voluntary decision to plead guilty. Rather, he simply contends that counsel could, through objections at the plea proceeding, have derailed the plea agreement.  That was not counsel's responsibility.

Petitioner fails to show that counsel performed deficiently.

**Petitioner Fails to Show Prejudice** – Even if counsel was deficient, Petitioner fails to establish prejudice.

As noted hereinabove, in the context of a guilty plea, "in order to satisfy the 'prejudice' requirement, the defendant must show that there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." *Hill v. Lockhart*, 474 U.S. 52, 59 (1985).

Petitioner argues in his Petition that "but for counsel's error, the results of the plea hearing would have been different."  (Petition, Doc. 1 at 23.)  That, of course, is not the required prejudice.  Rather, Petitioner must show that he would not have pled guilty had counsel objected.  Petitioner asserts to the contrary that "Respondents' assertion that Petitioner must prove he would have refused to accept a plea and gone to trial but for counsels' errors takes the second prong of *Strickland* beyond the clear holding of the Court."  (Reply, Doc. 15 at 11.)

It is true that *Hill* simultaneously stated the prejudice standard for pleading defendants as one of "affecting' the outcome of the plea process" and as requiring a

showing that the defendant would have "insisted on going to trial." 474 U.S. at 58-59. It is also true that in *Missouri v. Frye*, the Supreme Court clarified that "*Hill* does not, however, provide the sole means for demonstrating prejudice arising from the deficient performance of counsel during plea negotiations." 132 Sup.Ct. 1399, 1409-1410 (2012). Thus, in *Frye*, the Court found that prejudice by a defendant who forewent a plea offer and suffered greater punishment under a subsequent plea agreement can be shown by establishing that they would have accepted the more favorable plea offer and successfully completed a guilty plea if given proper advice. *Id.* at 1410.

However, in *Frye*'s companion case decided the same day, *Lafler v. Cooper*, the Court reiterated the standard under *Hill* where a plea agreement is accepted and a guilty plea is entered. "In *Hill*, when evaluating the petitioner's claim that ineffective assistance led to the improvident acceptance of a guilty plea, the Court required the petitioner to show 'that there is a reasonable probability that, but for counsel's errors, [the defendant] would not have pleaded guilty and would have insisted on going to trial.'" *Lafler*, 132 S.Ct. 1376, 1384-85 (2012). Petitioner proffers no authority for the proposition that a defendant, such as himself, who pleads guilty based on purportedly defective representation, can establish prejudice some way other than showing that with proper representation he would have rejected the plea agreement and proceeded to trial.

Petitioner proffers nothing to support a conclusion that had counsel opposed the factual basis he would have refused to plead guilty and would have proceeded to trial. At most, Petitioner argues in his reply that an objection would have stopped the plea proceeding and "Petitioner would not have felt the pressure to plead guilty" and a "jury trial would likely have resulted." (Reply, Doc. 15 at 10.)

Much of this chain of logic is founded upon Petitioner's mistaken belief that the available evidence was insufficient to convict him of manslaughter, let alone murder. (*Id.*) Three things militate against such a conclusion.

First, as discussed hereinabove, the available evidence was certainly sufficient evidence to suggest Petitioner's ultimate conviction on manslaughter, and likely

sufficient to suggest his conviction on second degree murder, (perhaps even first degree murder).  Petitioner's proffered version of events (the victim was accidentally injured by him during a fist and knife fight with her cousin) was contradicted by substantial evidence (*i.e.* the lack of injury on the cousin, the cousin's age and ill health, the extent and ferocity of the injuries on the victim, etc.).  Indeed, the extent of the attack on the victim could have established the premeditation necessary for a first degree murder conviction.  *See e.g. State v. VanWinkle*, 230 Ariz. 387, 392, 285 P.3d 308, 313 2012 (premeditation shown by "prolonged, brutal attack"); *State v. Gulbrandson*, 184 Ariz. 46, 65, 906 P.2d 579, 598 (1995) (finding "protracted, brutal, and ... sustained" attack on victim evidence of premeditation); *State v. Lopez*, 158 Ariz. 258, 263, 762 P.2d 545, 550 (1988) ("nature, severity and placement of the injuries to the victim also provide some evidence of premeditation").

Second, as noted by the Arizona Court of Appeals and concluded hereinabove, any objection by counsel would have ultimately failed.  The record was sufficient to establish a factual basis. Even if the factual basis had been insufficient at the point of objection, there remained the possibility that (at Petitioner's urging) the deficiency would have been cured, *e.g.* by soliciting additional proffers of evidence, admissions from Petitioner, etc. Thus, there is no reason to believe the plea would not have proceeded.  Such vacillations are common dramas in the course of guilty pleas, with defendants loathe to admit a crime readily switching to admissions after consulting with their counsel on the effect on their plea agreements from continued denials of their guilt.

Third, to the extent that Petitioner focuses on the momentary results of the plea proceeding, Petitioner misses the boat.  The relevant consideration is whether Petitioner would have ultimately decided to insist on proceeding at trial.  Technical failings in the plea proceedings do not inexorably indicate a defendant would choose to not plead guilty.  Indeed, a plea agreement may be so favorable that a defendant would gladly embrace technical failings to effectuate the agreement.  Hence the number of cases where a defendant has challenged the court's rejection of a plea agreement based upon

an insufficient factual basis, or other bases. *See e.g. U.S. v. O'Brien*, 601 F.2d 1067, (9th Cir. 1979); *In re Vasquez-Ramirez*, 443 F.3d 692 (9th Cir. 2006).

Petitioner proffers no viable reason why he would have proceeded to trial on the first and second degree murder charges, as well as the burglary, theft, etc. crimes which were dismissed under the plea agreement.  Petitioner makes reference to the "pressure" he felt to plead.  Petitioner does not asset that pressure existed because of any unique feature of the instant plea proceeding, nor because of any deficient performance by counsel.  Rather it was simply the inherent stress of choosing between a risky trial and a distasteful but potentially more favorable guilty plea, a stress Petitioner would have continued to feel regardless of counsel's purportedly deficient conduct.  Thus it cannot be said that "but for" such deficient conduct he would not have pled guilty.

**Summary** – Petitioner fails both to show deficient performance by counsel, and prejudice from any purported deficiency.   Accordingly, Petitioner's Ground Two is without merit and must be denied.

## E.  REQUEST FOR EVIDENTIARY HEARING

In his Petition, Petitioner requests, without elaboration, an evidentiary hearing. (Petition, Doc. 1 at 24.)  In his Reply, Petitioner repeats the request "if the Court deems necessary," and asserts his entitlement to an evidentiary hearing.  (Reply, Doc. 15 at 12.)

For the reasons discussed hereinabove, Petitioner is not entitled to an evidentiary hearing under the limitations set forth in 28 U.S.C. § 2254(d)(2) (review of claim decided on merits limited to record before state court).  Moreover, Petitioner proffers nothing to suggest he meets the requirements under 28 U.S.C. § 2254(e)(2) (failure to develop factual basis in state court proceedings).

More significantly, Petitioner fails to suggest what additional relevant evidence would be adduced at such an evidentiary hearing that would enable him "to prove the petition's factual allegations." *Schriro v. Landrigan*, 440 U.S. 465, 474 (2007).

For these reasons, Petitioner's request for an evidentiary hearing must be denied.

# IV.  CERTIFICATE OF APPEALABILITY

**Ruling Required** - Rule 11(a), Rules Governing Section 2254 Cases, requires that in habeas cases the "district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant."  Such certificates are required in cases concerning detention arising "out of process issued by a State court", or in a proceeding under 28 U.S.C. § 2255 attacking a federal criminal judgment or sentence. 28 U.S.C. § 2253(c)(1).

Here, the Petition is brought pursuant to 28 U.S.C. § 2254, and challenges detention pursuant to a State court judgment.  The recommendations if accepted will result in Petitioner's Petition being resolved adversely to Petitioner.  Accordingly, a decision on a certificate of appealability is required.

**Applicable Standards** - The standard for issuing a certificate of appealability ("COA") is whether the applicant has "made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2).  "Where a district court has rejected the constitutional claims on the merits, the showing required to satisfy § 2253(c) is straightforward: The petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong."  *Slack v. McDaniel*, 529 U.S. 473, 484 (2000).  "When the district court denies a habeas petition on procedural grounds without reaching the prisoner's underlying constitutional claim, a COA should issue when the prisoner shows, at least, that jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right and that jurists of reason would find it debatable whether the district court was correct in its procedural ruling." *Id.*

**Standard Not Met** - Assuming the recommendations herein are followed in the district court's judgment, that decision will be on the merits. Under the reasoning set forth herein, the constitutional claims are plainly without merit.

Accordingly, to the extent that the Court adopts this Report & Recommendation as to the Petition, a certificate of appealability should be denied.

## V.  RECOMMENDATION

**IT IS THEREFORE RECOMMENDED** that the Petitioner's Petition for Writ of Habeas Corpus, filed October 1, 2013 (Doc. 1), including the request for an evidentiary hearing, be **DENIED**.

**IT IS FURTHER RECOMMENDED** that, to the extent the foregoing findings and recommendations are adopted in the District Court's order, a Certificate of Appealability be **DENIED**.

## VI. EFFECT OF RECOMMENDATION

This recommendation is not an order that is immediately appealable to the Ninth Circuit Court of Appeals.  Any notice of appeal pursuant to *Rule 4(a)(1), Federal Rules of Appellate Procedure*, should not be filed until entry of the district court's judgment.

However, pursuant to *Rule 72(b), Federal Rules of Civil Procedure,* the parties shall have fourteen (14) days from the date of service of a copy of this recommendation within which to file specific written objections with the Court.  *See also* Rule 8(b), Rules Governing Section 2254 Proceedings.   Thereafter, the parties have fourteen (14) days within which to file a response to the objections.  Failure to timely file objections to any findings or recommendations of the Magistrate Judge will be considered a waiver of a party's right to *de novo* consideration of the issues,  *see United States v. Reyna-Tapia*, 328 F.3d 1114, 1121 (9th Cir. 2003)(*en banc*),  and will constitute a waiver of a party's right to appellate review of the findings of fact in an order or judgment entered pursuant to the recommendation of the Magistrate Judge, *Robbins v. Carey*, 481 F.3d 1143, 1146-47 (9th Cir. 2007).

Dated: March 3, 2014

13-1989r RR 14 02 24 on HC.docx

James F. Metcalf
United States Magistrate Judge

32